# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **TOUCHSTREAM TECHNOLOGIES, INC.,** | |
| *Plaintiff,* | Case No. _____ |
| v. | |
| **TCL TECHNOLOGY GROUP CORP.; TCL INDUSTRIES HOLDINGS CO., LTD.; TCL ELECTRONICS HOLDINGS, LTD.; and SHENZHEN TCL NEW TECHNOLOGY CO., LTD.,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Touchstream Technologies, Inc. ("Touchstream" or "Plaintiff"), hereby files this Complaint for Patent Infringement against TCL Technology Group Corp., et al. (collectively, "Defendants" or "TCL") and alleges, upon information and belief, as follows:

## THE PARTIES

1.     Plaintiff Touchstream Technologies, Inc., d/b/a Shodogg is a Delaware corporation with its principal place of business in South Dakota.

2.     Upon information and belief, Defendant TCL Technology Group Corporation ("TCL Technology") is a corporation organized and existing under the laws of China, with its principal place of business located at TCL Tech Building, 17 Huifeng Third Road, Zhongkai Hi-Tech Development District, Huizhou City, Guangdong Province, China. Defendant TCL Technology is a leading manufacturer and seller of displays and televisions in the world and in the United States. Upon information and belief, TCL Technology was formerly known as TCL Corporation. Upon information and belief, Defendant TCL Technology does business in Texas and in the Eastern District of Texas, directly or through intermediaries. TCL Technology may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business. Upon information and belief, TCL Technology owns the trademark "TCL" which is marked on each of the Accused Products.

3.     Upon information and belief, Defendant TCL Industries Holdings Co., Ltd. ("TCL Industries") is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at 22nd Floor, TCL Technical Tower, Huifeng Third Road, Zhongkai Development Zone, Huizhou, Guangdong, China 516006. On information and belief, TCL Industries is the ultimate parent of and/or controls the other TCL Defendants and is

responsible for the infringing activities identified in this Complaint. TCL Industries may be served with process under Fed. R. Civ. P. 4(f)(3) and 4(h)(2).

4.    Upon information and belief, Defendant TCL Electronics Holdings, Ltd. f/k/a TCL Multimedia Technology Holdings Ltd. ("TCL Electronics") is a corporation duly organized and existing under the laws of the Cayman Islands. Its principal place of business is 5/F, Building 22E, 22 Science Park East Avenue, Hong Kong Science Park, Shatin, New Territories, Hong Kong. TCL Electronics is a leading developer, manufacturer, and seller of displays and televisions in the world and in the United States. Upon information and belief, TCL Electronics conducts business in Texas and in the Eastern District of Texas, directly or through its agents. TCL Electronics may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701 as its registered agent because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

5.    Upon information and belief, Defendant Shenzhen TCL New Technology Co., Ltd. ("Shenzhen TCL") is a corporation organized and existing under the laws of the People's Republic of China with a principal place of business at 9th Floor, TCL Electronics Holdings Limited Building, TCL International E City, No. 1001, Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, China. On information and belief, Shenzhen TCL is a subsidiary of and/or controlled by TCL Industries. On information and belief, Shenzhen TCL is involved with designing, developing, making, having made, selling, having sold, offering to sell, importing, and/or having imported into the United States the Accused Products. Shenzhen TCL may be served with process under Fed. R. Civ. P. 4(f)(3) and 4(h)(2).

6.    Upon information and belief, the Defendants identified in paragraphs 2-5 (collectively, "TCL" or "Defendants") are an interrelated group of companies, which together

comprise one of the world's largest manufacturers and sellers of televisions in the United States.

7.      Upon information and belief, the Defendants named above and their affiliates share the same office address, executives, management, common ownership, advertising platforms, facilities, distribution chains and platforms, and the same Accused Functionalities (as defined herein) and related technologies. Upon information and belief, TCL operates as a unitary business venture to offer the Accused Services in the United States, including in Texas and this District. Accordingly, the Defendants are jointly and severally liable for the acts of patent infringement alleged herein, and the actions of each Defendant can be attributed to the other Defendants.

8.      Upon information and belief, Defendants place or contribute to placing the Accused Functionalities into the stream of commerce via established distribution channels knowing, understanding, and/or expecting that such services will be purchased by consumers and used in the United States, including in the State of Texas and this District. Accordingly, Defendants' contacts with the State of Texas and this District are purposeful and they should reasonably foresee that their activities may subject them to litigation here.

<u>**NATURE OF THE ACTION**</u>

9.      This is a civil action against TCL for patent infringement arising under the patent statutes of the United States, 35 U.S.C. § 271 *et seq.* for the infringement of United States Patent No. 8,356,251, (the "'251 Patent), 11,475,062 (the "'062 Patent"), and No. 11,086,934 (the "'934 Patent") (collectively, "the Touchstream Patents"). True and correct copies of the '251 Patent, the '062 Patent, and the '934 Patent are attached as Exhibits A, B, and C, respectively, to this Complaint.

## JURISDICTION AND VENUE

10.    This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 1367.

11.    This Court has specific and personal jurisdiction over TCL in this action pursuant to due process and/or the Texas Long Arm Statute because TCL, directly and/or through agents, subsidiaries, and/or intermediaries, has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over TCL would not offend traditional notions of fair play and substantial justice. TCL has engaged in continuous, systematic, and substantial activities within this State, including substantial marketing and sales of services—including the MagiConnect and TCL Home app services that are used by TCL in connection with performing the Accused Functionalities—within this State. Furthermore, TCL—directly and/or through agents, subsidiaries, and/or intermediaries and/or inducement—has committed and continues to commit acts of infringement in this District by, among other things, offering, performing, and using the MagiConnect and TCL Home apps services. TCL also has derived substantial revenues from infringing acts in this District, including from the performance and use of the infringing MagiConnect and TCL Home app services in this District, as well as the import, sale, and offer for sale of TCL compatible products, including through authorized dealers located in this District. In the alternative, this Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(2).

12.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Defendants are foreign companies that may be sued in any Judicial District, including the Eastern District of Texas. Further, upon information and belief, the Defendants have admitted

or not contested proper venue in this Judicial District in other patent infringement actions. *See, e.g., Personalized Media Communications, LLC v. TCL Corp*, 2:17-cv-00433-JRG (E.D.Tex. 2017); *Monument Peak Ventures, LLC v. TCL Electronics Holdings Ltd. f/k/a TCL Multimedia Technology Holdings, Ltd.*, No. 5:24-CV-00011-RWS-JBB (E.D. Tex. 2024); *Sinotechnix LLC v. TCL Electronics Holdings Ltd.* 2:25-cv-00792-JRG-RSP (E.D.Tex. 2025).

13.    This Court previously found that a number of Defendants are subject to personal jurisdiction in this forum. *See Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18-CV-00546-JRG, 2020 WL 1478356, at *3 (E.D. Tex. Mar. 25, 2020) (finding jurisdiction over TCL Electronics, Shenzhen TCL, and TCL Technology f/k/a TCL Corporation); *see also id.* n.1 (listing other cases in this District in which Defendants have appeared).

14.    Venue is also proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).  TCL, directly and/or through agents, subsidiaries, and/or intermediaries, maintains a permanent physical presence within the Eastern District of Texas, conducting business from numerous locations.  For example, as shown in Exhibit D,[1] TCL lists on its website that its products are available at retail stores in Beaumont, Tyler, Texarkana, Marshall, and Longview by authorized dealers for TCL products. TCL also has committed acts of infringement in this District, directly and/or through agents, subsidiaries, and/or intermediaries, as described above. For example, the Terms of Service of TCL's mobile application form a contract between Shenzhen TCL New Technology Co., Ltd and end users. Exhibit E at 1 (Nov. 27, 2023 TCL Smart Services Terms and Conditions of Use).

15.    Upon information and belief, personal jurisdiction also exists specifically over each of the Defendants because they have overlapping executives, interlocking corporate structures and

---

[1] Screenshots of "Where to Buy" page, TCL (last visited Feb. 9, 2026), https://us.tcl.com/products/tcl-55-qm6k-series-qd-mini-led-qled-4k-uhd-smart-tv-with-google-tv-55qm6k

close relationships as developer, offeror, and user of the Accused Functionalities. In addition, on information and belief, Defendants have purposefully directed activities at citizens of the State of Texas and located within this District, such as by using, selling, and/or offering for sale products that implement the Accused Functionalities. On information and belief, Defendants have purposefully and voluntarily placed Accused Functionalities into the stream of commerce through established distribution channels with the expectation, knowledge, and intent that they will be downloaded and used by customers located throughout the United States, including in Texas and in this District.

16.    For example, the Google Play Store page for the TCL MagiConnect mobile application, when visited from the United States, lists Defendant TCL Group as the "Developer," identifying a Chinese corporate address, rather than any United States entity.[2]

17.    As another example, the Apple App Store page for the TCL Home mobile application, when visited from the United States, lists the "Seller" as Defendant Shenzhen TCL, rather than any United States entity.[3] The privacy policy linked on the app store is the "TCL Global Privacy Notice" and "sets out how TCL and/or its affiliates and subsidiaries (collectively, "TCL", "we", "us" or "our") protect the Personal Data we process relating to you (your "Personal Data"), what types of Personal Data we collect about you, what we do with it, how we disclose it and which rights you have in relation to the processing of Personal Data."[4]

18.    Upon information and belief, TCL directs business, including the Accused Functionalities and/or products compatible with the Accused Functionalities, to the United States and this District and derives significant benefit from doing so. TCL's Third Quarter 2025 Report

---

[2] https://play.google.com/store/apps/details?id=com.tcl.magiconnectfree&hl=en_US
[3] https://apps.apple.com/in/app/tcl-home/id1475407335
[4] https://www.tcl.com/in/en/legal/privacy-notice

states that "In the third quarter of 2025, global shipment of TCL TV reached 7.61 million sets, contributing to a total of 21.08 million sets of shipment in the first three quarters, representing a year-on-year ("YoY") increase of 5.3%."[5] TCL goes on to represent that "[f]rom January to August 2025, TCL TV remained among the top two by retail sales volume in the United States."[6]

19.    Upon information and belief, the referenced manufacturing, distribution, selling, and importation into the United States of many or all of the Accused Functionalities and/or products compatible with the Accused Functionalities is performed by the TCL Defendants, either directly and/or through intermediaries, subsidiaries, or affiliates, with full knowledge that the Accused Functionalities and/or products compatible with the Accused Functionalities are destined for sale in the United States, including sales in the State of Texas and this District. TCL has authorized retailers throughout the United States, including in Texas and this District.

20.    On information and belief, the TCL Defendants have derived substantial revenue from infringing acts in this District, including from the sale and use of products used with the Accused Functionalities.

21.    Upon information and belief, the Defendants direct and/or control the actions of its subsidiaries, including its U.S.-based subsidiary TTE Technology, Inc. ("TTE").  TTE is 100% owned by TTE Corporation. TTE Corporation is, in turn, 100% owned by TCL Electronics.[7] TCL Electronics Interim 2025 Report makes clear that TCL Electronics is the one pursuing its "Globalization Strategy" and achieving its market share milestones in the United States.[8] TCL

---

[5]    https://www.tcl.com/global/en/news/tcl-electronics-delivers-simultaneous-growth-in-tv-sales-and-revenue-for-the-first-three-quarters-of-2025

[6]    https://www.tcl.com/global/en/news/tcl-electronics-delivers-simultaneous-growth-in-tv-sales-and-revenue-for-the-first-three-quarters-of-2025

[7] *Cerence Op. Co. v. TCL Industries Holdings Co. Ltd*., 2:25-cv-00758-JRG at ECF No. 9 (E.D. Tex. 2025) (Rule 7.1 corporate disclosure).

[8] TCL Electronics Holdings Ltd., *Interim Report 2025*, at 10 (Aug. 22, 2025).

Electronics publicly represents itself, not its subsidiary TTE, as the entity driving and coordinating the global television business, including the operations carried out in the United States.

22.    As explained below, this Court is familiar with Touchstream's technology and patents due to ongoing litigation in this District between Touchstream and various media and consumer technology companies.

## TOUCHSTREAM'S PATENTS

23.    In 2010, David Strober, the inventor of the Touchstream Patents and the original founder of Touchstream, was working at Westchester Community College as a Program Manager and e-learning instructional designer. At this job Mr. Strober facilitated the development of online college courses, developing software as needed to support those efforts. At least as early as mid-2010, Mr. Strober perceived the need to be able to take content that could be viewed on a smaller device, like a smartphone, and "move" it to another device, like a computer monitor or television. In working to bring his idea to fruition, Mr. Strober expanded his work by using a device like a smartphone to cause content to play on a second screen, even if that content resided elsewhere (like the public internet). Near the end of 2010, Mr. Strober had developed a working prototype that demonstrated his groundbreaking concept. Recognizing that that his invention could revolutionize how people located, viewed, and shared media, Mr. Strober filed his first patent application in April 2011.

24.    The Touchstream Patents are not directed to an abstract idea, but are limited to a specific, concrete messaging architecture. The claims require various components to send or receive signals (or messages) to control the playback of content from various media players over a network, with precise requirements varying by claim. They do not cover all forms of remote control of content over a network. Certain steps of certain claims must also be performed in their

specified order. Steps of the '251 Patent include, *inter alia*:

- Assigning a synchronization code to a display device by a server system;

- Receiving a message in the server system including the synchronization code;

- Storing a record in the server system based on the synchronization code;

- Receiving signals specifying a video file and identifying a particular media player;

- Including the synchronization code and a universal playback control command in the messages;

- Converting the universal playback control command to corresponding programming code; and

- Storing in a database information that specifies the video file to be acted upon, identifies the media player, and includes the corresponding programming code.

The '062 and '934 patent claims typically include similar, and some additional, steps, for example:

- using different media players, generating sets of messages including commands in a first format,

- communicating the generated messages to a server system,

- that sends second commands in a second format based on the configuration or the particular media playing application, associating different devices with a unique identification code, and

- coordinating between a personal computing device and display device loading a plurality of media players, video files, and control commands.

25.    Further, Mr. Strober's improvements in this area do not reflect routine or conventional steps. The arrangement of components and steps themselves is inventive, enabling, among other things, using different media players, associating different devices with a unique

identifier (e.g., an account or a user identification), and coordinating between a computing device and a video content provider utilizing a plurality of media players, pieces of content, and control commands.

26.    The Touchstream Patents, which are entitled "Play Control of Content on a Display Device" each claim priority to U.S. Provisional Pat. App. No. 61/477,998 (filed on April 21, 2011).

27.    Touchstream is the owner, by assignment, of all rights, title, and interest to the '251 Patent, the '062 Patent, and the '934 Patent.

## TOUCHSTREAM REVOLUTIONIZES CONTENT STREAMING

28.    In 2011, Mr. Strober officially incorporated Touchstream to share his inventions with the world.

29.    In the following years, Touchstream raised millions of dollars in investments.

30.    Since 2011, Touchstream, d/b/a "Shodogg," developed software that enables content to be wirelessly cast (e.g., visited, displayed, and controlled) from a mobile device to a second device (e.g., TV, computer, tablet, etc.). Touchstream has been a leader in developing casting technology and has received numerous awards and recognition.

31.    Touchstream's patented technology is highly valuable to TCL, as demonstrated by the history of how that technology is used and licensed in the industry, and by how this technology is used and advertised by TCL.

32.    As discussed in the *Touchstream v. Google*[9] trial, in July 2013 Touchstream entered into a license agreement with Quadriga, the second largest provider of relevant technology to hotel chains, with a license to Touchstream's patented technology for a license fee to Touchstream of $0.48 per hotel room per month, and a 50/50 split of advertising revenue through that technology.

---

[9] 6:21-cv-00569-ADA (W.D. Tex.).

33.    Upon information and belief, TCL derives significant advertising revenue from the infringing services. For instance, the Google Play download website for the TCL Home app says "Contains ads."[10] The same is true of the Google Play download website for MagiConnect TV App Services.[11]

34.    Unfortunately, the efforts of Touchstream and Touchstream's partners to appropriately monetize Mr. Strober's inventions were significantly hindered by infringement of the Touchstream Patents by various parties, including by TCL. The timing and scope of TCL's infringement is discussed in more detail below.

## TCL'S ACCUSED FUNCTIONALITIES

35.    TCL released its MagiConnect mobile applications in or around 2020 which infringes claims of the Touchstream Patents.

36.    According to the TCL MagiConnect Google Play Store listing, the MagiConnect app "gives you access to casting online videos and all local videos, music and images to TV."[12]

37.    The accused TCL MagiConnect app functionalities comprise the methods performed through operation of at least the TCL MagiConnect mobile application and associated compatible TCL television devices. The TCL MagiConnect app services provided in the past, and continue to provide, functionality and structure that facilitates the controlling of content, such as video, music, and photo content, on a content presentation system described in further detail below.

38.    Users may download and install TCL's MagiConnect applications through Google Play and Apple App Store:

---

[10] https://play.google.com/store/apps/details?id=com.tcl.tclhome&hl=en_US
[11] https://play.google.com/store/apps/details?id=com.tcl.magiconnectfree&hl=en_US
[12] https://play.google.com/store/apps/details?id=com.magiconnect.tcast&hl=en_US



MagiConnect T-Cast TCL Remote Official TCL Smart TV Remote, Apple[13]



MagiConnect – TCL Official TV R, TCL Group, Google Play[14]

The app store listings for the MagiConnect applications advertise the ability to control multiple

sources of media; for instance, media from YouTube, Netflix, Hulu, or local sources of media:

---

[13] https://apps.apple.com/us/app/magiconnect-t-cast-tcl-remote/id1331889700
[14] https://play.google.com/store/apps/details?id=com.magiconnect.tcast&hl=en-US

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 13

 

MagiConnect – TCL Official TV R, TCL Group, GOOGLE PLAY[15]

39.    Upon installation, users may open the MagiConnect application and select the type of TCL TV the application will be paired to control. The MagiConnect application then identifies available compatible TCL TVs in range of the user, through unique identifiers assigned to the TCL TV such as friendly names and IP addresses. Upon selection, the MagiConnect application connects to the user's identified TV:

---

[15] https://play.google.com/store/apps/details?id=com.magiconnect.tcast&hl=en-US



How to Use MagiConnect Function on TCL Google TV, YOUTUBE, WebPro Education, March 27, 2024[16]

40.    After connecting the MagiConnect application to an available TV, the MagiConnect application presents content options to the user from various media sources, for example YouTube, Twitch, and ToonGoogles. The MagiConnect application further presents specific pieces of content available through each service within the mobile application interface. Upon selection, a user may cast a piece of content to playback on the connected TCL TV, for example through the MagiConnect interface's "Cast to TV" button. The MagiConnect application then sends messages to the previously-identified TV, via a server system, including information that describes the selected TV, selected media content, and the particular media player the selected content is playable through:

---

[16] https://www.youtube.com/watch?v=2DVLutT8s_4



MagiConnect – TCL Official TV R, TCL Group, Google Play[17]



T-Cast iOS Review for YouTube Casting feature, TCL MagiConnect (Formerly T-Cast App), January 9, 2020[18]

---

[17] https://play.google.com/store/apps/details?id=com.magiconnect.tcast&hl=en-US
[18] https://www.youtube.com/watch?v=gNmcIFjnIyw

41.    After selected content has been cast to a TCL TV, users may further control the playback of the selected content, including through play/pause functionality, volume control, and scrub commands to seek to a desired playback location.

42.    TCL unveiled its TCL Home mobile applications, which infringe claims of the Touchstream Patents, in or around November 2020.[19]

43.    According to the TCL Home Google App Store listing, the TCL Home app allows users to "Control the TV simply on your phone," and to "Media Cast: Larger screen, a better experience. Cast movies, pictures, videos and music on TV to build yourself a home theater."[20]

44.    The accused TCL Home app functionalities comprise the methods performed through operation of at least the TCL Home mobile application and associated compatible TCL television devices. The TCL Home app services provided in the past, and continue to provide, functionality and structure that facilitates the controlling of content, such as video, music, and photo content, on a content presentation system described in further detail below.

45.    Further, TCL has released several similar iterations of content casting functionalities that operate the same or similar manner, including:

- The MagiConnect TV App Services applications, released December 2023;

- The MagiConnect T-cast TV Services, released March 2022;

- The TV Remote TV Assistant application, released December 2017;

46.    The TCL MagiConnect app, Home apps, and all similar TCL apps, as used with compatible TCL television devices to perform the claimed methods of the Touchstream Patents, are collectively herein referred to as "the Accused Functionalities."

---

[19] https://play.google.com/store/apps/details?id=com.tcl.tclhome&hl=en_US
[20] https://apps.apple.com/in/app/tcl-home/id1475407335

47.    Upon information and belief, each of the steps discussed above is either performed by or otherwise attributable to TCL.  To the extent another actor performs any of these steps, TCL directs or controls that performance, conditioning participation in the activity or the receipt of a benefit upon performance of the patented method steps and establishing the manner or timing of that performance. Additionally, on information and belief, TCL profits from its infringement and has the right and ability to stop or limit the infringement. For instance, TCL tests and demonstrates the Accused Functionalities, including in advertisements. Further, TCL advertises and demonstrates to customers that the infringing method steps will be performed, as shown above. TCL also causes automatic updates to the TCL MagiConnect and TCL Home systems. As discussed below, the functionality advertised and directed by TCL infringes the Touchstream Patents, and on information or belief, is known by TCL to do so.

48.    TCL's use of Touchstream's technology goes beyond stimulating sales of devices—TCL's use also stimulates advertising and other partnership revenue. For instance, the Google Play download websites for both the TCL MagiConnect and TCL Home apps say "Contains ads."[21] Further, TCL Electronics' 2025 Interim Report explains that in addition to its "TV Segment" that handles the "manufacture and sale of TVs," it also has an "Internet business segment" that includes "advertising."[22] Likewise, a December 15, 2025 Verified Petition filed by the State of Texas against TCL North America, Inc., explains: "Through Automatic Content Recognition (ACR) Technology, TCL secretly monitors what consumers watch across streaming apps, cable, and even connected devices like gaming consoles or Blu-ray players….TCL Harvests

---

[21] https://play.google.com/store/apps/details?id=com.tcl.tclhome&hl=en_US
[22] TCL Electronics Holdings Ltd., *Interim Report 2025*, at 47 (Aug. 22, 2025); *see also id.* at 93 (discussing "AVOD," defined as "Ad-Based Video-on-Demand, a service where video content is available on-demand to users for free, supported by advertisements"); *id.* at 95 (discussing "FAST," defined as "Free Ad-Supported Streaming TV, a type of streaming service where users can watch content for free but must view advertisements").

this data, builds profiles of consumers' behavior, and sells it for profit."[23] That Petition also explains that "about one in every ten Texans likely live in a home monitored by TCL Smart TVs," and that "[a]s of late 2024, TCL's ad-supported streaming service on TCL TVs reportedly had over 24 million monthly users globally," and that "[t]his scale grants TCL outsized control of Texas's connected TV market, allowing the company to harvest data on millions of consumers worth billions of dollars—all without their knowledge or consent." *Id.* at 6. That Petition, citing evidence, also explains that "[s]ince TCL entered the TV business in the early 2000s, it has undercut the competition on the retail price of TVs," and that "[t]o make a profit TCL's business has been focused not on hardware but on connected TV advertising, and this ad tech has only become more sophisticated and intrusive in recent years with TCL's aggressive expansion." *Id.* at 9-10. The Petition also explains that "to run targeted advertisements, TCL shares consumers' viewing data with demand-side platforms, ad networks, measurement companies, data brokers, and cross-device graphing companies." *Id.* at 20. The Petition also explains, citing evidence, that "TCL is a Chinese state-owned enterprise under the control of the Chinese Communist Party (CCP)," that "TCL has received billions of dollars in CCP funds to subsidize its efforts to dominate global tech markets," and that "TCL Smart TVs are effectively Chinese-sponsored surveillance devices, recording the viewing habits of Texans at every turn without their knowledge or consent." *Id.* at 21-22.

## TCL'S KNOWLEDGE OF TOUCHSTREAM'S PATENTS

49.    Since at least December 14, 2011, Touchstream has publicized that its revolutionary product offerings were "patent-pending."[25]

---

[23] Texas' Original Verified Petition, Application for Temporary and Permanent Injunctions and Request for an Ex Parte Temporary Injunction, at 1, https://www.texasattorneygeneral.gov/sites/default/files/images/press/TCL%20TV%20Petition%20Filed.pdf.

50.    In 2011 and 2012, Touchstream attended various trade shows at which it presented its technology to develop business opportunities. At these trade shows, it was Touchstream's practice to inform those to whom it presented that its technology was patent pending. In January 2012, Touchstream had a booth at the Consumer Electronics Show ("CES") in Las Vegas, Nevada. Touchstream's appearance at CES garnered significant press attention and industry recognition at the time.[24]

51.    Upon information and belief, TCL frequently attended and still attends similar trade shows, including CES. In January 2012, TCL also attended CES in Las Vegas, Nevada, where Touchstream presented from its booth.[25]

52.    Just days after the first Touchstream Patent issued on January 15, 2013, Touchstream issued a press release announcing this patent award.[26]

53.    At CES in 2014, TCL debuted "basically a new kind of smart TV," as "the TCL

---

[24] Shodogg, *Shodogg announces the release of ScreenDirect a business-to-business solution enabling companies to seamlessly direct digital content across screens*, Cision PR Newswire (Jan. 17, 2013 9:15 ET) https://www.prnewswire.com/news-releases/shodogg-announces-the-release-of-screendirect-a-business-to-business-solution-enabling-companies-to-seamlessly-direct-digital-content-across-screens-187284641.html; *see also, e.g., Meet Shodogg Who Won this Year's Techweek NYC Launch Competition*, AlleyWatch (12/2014); Engadget, *Shodogg Makes a Grand Debut at CES*, (Jan. 17, 2012) https://www.engadget.com/2012-01-17-shodogg-makes-a-grand-debut-at-ces.html.
[25] *See* "CES 2012 In Pictures" (Jan 13, 2012, 11:58 am EST), https://www.forbes.com/pictures/mlg45lild/2012-consumer-electronics-show-15 (presenting "[a] general view of televisions at the TCL (The Creative Life) booth at the 2012 International Consumer Electronics Show at the Las Vegas Convention Center January 11, 2012 in Las Vegas, Nevada.").
[26] Shodogg, *Shodogg Announces the Release of ScreenDirect a Business-to-Business Solution Enabling Companies to Seamlessly Direct Digital Content Across Screens*, CISION PR NEWSWIRE (Jan. 17, 2013, 9:15 ET) https://www.prnewswire.com/news-releases/shodogg-announces-the-release-of-screendirect-a-business-to-business-solution-enabling-companies-to-seamlessly-direct-digital-content-across-screens-187284641.html; *see also, e.g., Meet Shodogg Who Won this Year's Techweek NYC Launch Competition*, ALLEYWATCH (Dec. 2014), https://www.alleywatch.com/2014/12/meet-shodogg-who-won-this-years-techweek-nyc-launch-competition/.

display makes streamed content the main attraction and old-school channels more ancillary."[27]

54.     It was pattern and practice for Touchstream to inform potential business partners of its patents and patent applications, as well as the fact that its technology was protected by those patents and patent applications. Touchstream has also been involved in significant, widely public litigation regarding infringement of its patents:

55.     **Vizbee, Inc.**[28]  In 2017, Touchstream sued Vizbee in the Southern District of New York, asserting patents that claim priority back to the same patent application at issue in this case and, like the patents asserted here, claim priority to Mr. Strober's original prototype work in October 2010. Vizbee and Touchstream litigated for more than two years and resolved the dispute in early 2020.

56.     **Google, LLC.**[29]  In 2021, Touchstream sued Google in the Western District of Texas, asserting patents that claim priority back to the same patent application at issue in this case and, like the patents asserted here, claim priority to Mr. Strober's original prototype work in October 2010. One of those patents was the '251 Patent asserted in this case. The Court rejected at summary judgment Google's defense that Touchstream's patents are invalid under 35 U.S.C. § 101 and granted Touchstream's motion for summary judgment finding the Touchstream Patents valid under Section 101. Furthermore, Google's six petitions for *inter partes* review, including two petitions directed to the '251 Patent asserted in this case, were each rejected by the Patent Trial and Appeal Board on final written decisions. At trial, the jury awarded Touchstream approximately $339 million in damages.

---

[27] https://newatlas.com/tcl-first-roku-tv/30389/
[28] *Touchstream Technologies, Inc v. Vizbee, Inc.*, No. 17-cv-06247-PGG-KNF (S.D.N.Y.).
[29] *Touchstream Technologies, Inc. v. Google LLC*, No. 6:21-cv-00569-ADA (W.D. Tex.).

57.   **Cable Companies.**[30]   In 2023, Touchstream sued several of the largest cable companies in the United States in this Court. Touchstream's claims against Comcast were tried to a jury in March 2025, settling just prior to closing arguments. The '251 Patent and '934 Patent asserted in this complaint were also asserted in each of these cases. Furthermore, Comcast filed four IPR petitions challenging the validity of every claim in the '251 Patent and '934 Patent, but the PTAB denied institution of both petitions directed to the '934 Patent, while the PTAB affirmed the validity of the asserted claims of the '251 Patent on Final Written Decisions. *See* IPR2024-00325 and IPR2024-00326. The EDTX Court also rejected at summary judgment Comcast's defenses that Touchstream's patents (including the '251 Patent and '934 Patent) are invalid under 35 U.S.C. § 101 and granted Touchstream's motion for summary judgment finding Touchstream's patents (including the '251 Patent and '934 Patent) valid under Section 101.

58.   **VIZIO, Inc.**[31]   In 2024, Touchstream sued VIZIO, Inc. in the Central District of California, asserting patents related to and stemming from the same family as the patents asserted in this complaint. This lawsuit has been widely reported on, including by Bloomberg.[32] The parties settled the lawsuit in December 2024.

59.   **Yamaha Corporation.**[33]   In 2024, Touchstream sued Yamaha Corporation in the Eastern District of Texas, asserting the '062 patent at issue in this complaint. This lawsuit has been widely reported on. The parties settled the lawsuit in January 2026.

60.   **Hisense Co. Ltd.**[34]   In 2025, Touchstream sued Hisense Company Ltd. in the

---

[30] *Touchstream Technologies, Inc. v. Charter Communications, Inc. et al.*, No. 2:23-cv-00059-JRG (E.D. Tex.).
[31] *Touchstream Technologies, Inc. v. VIZIO, Inc.*, No. 8:24-cv-02328-FWS-KES (C.D. Cal. 2024).
[32] *See* Lauren Castle, *Touchstream Hits Vizio With Patent Suit Over Casting Products*, BLOOMBERG LAW (Oct. 28, 2024, 11:16 AM CT), https://news.bloomberglaw.com/ip-law/touchstream-hits-vizio-with-patent-suit-over-casting-products.
[33] *Touchstream Technologies, Inc. v. Yamaha Corp.*, No. 2:24-cv-00739-JRG (E.D. Tex. 2024).
[34] *Touchstream Technologies, Inc. v. Hisense Co. Ltd.*, No. 2:25-cv-00753-JRG (E.D. Tex. 2025).

Eastern District of Texas, asserting the '934 patent at issue in this complaint. The case remains pending.

61.    These litigations—and particularly Touchstream's verdict against Google—received significant press coverage.[35] TCL was either aware of these litigations or willfully blind to them, and TCL never approached Touchstream about a license during the pendency of any of these litigations.

62.    Prior to initiating this litigation, in September of 2024, Touchstream sent a letter to individuals within the TCL's corporate family, including at least TCL Technology and its U.S. subsidiary TTE through Victor Yang, Yan Xiaolin, and Qian Wen about its technology and patent portfolio to explore the possibility of doing business with TCL. For example, the letter stated: "Touchstream has won numerous industry awards for its inventions, and owns intellectual property rights resulting from its years of research and development—including 12 issued patents and 5 pending applications. I have attached a list of Touchstream's issued patents and pending patent applications for your review." On information and belief, the employees and agents of TCL Technology and/or TTE contacted by Touchstream freely share information with Defendants.

63.    Despite knowing of the Touchstream Patents, TCL has intentionally disregarded Touchstream's intellectual property rights and willfully infringed the Touchstream Patents.

64.    At no point did TCL reach out to Touchstream about potentially acquiring a license to Touchstream's pending or awarded patents, and to this day TCL has not requested or received a

---

[35] *See, e.g.,* Blake Brittain, *Google Owes $338.7 Million in Chromecast Patent Case, US Jury Says*, REUTERS (July 24, 2023, 3:59 PM CT), https://www.reuters.com/legal/google-owes-3387-mln-chromecast-patent-case-us-jury-says-2023-07-24/#:~:text=July%2024%20(Reuters)%20%2D%20Alphabet%27s,Waco%2C%20Texas%20decided%20on%20Friday; Ryan Davis, *Google Told to Pay $339M In WDTX Chromecast Patent Trial*, LAW360 (July 21, 2023, 7:29 PM ET), https://www.law360.com/articles/1702367/google-told-to-pay-339m-in-wdtx-chromecast-patent-trial.

license to any of the Touchstream Patents.

65.     Accordingly, on information and belief, TCL knew of Touchstream's patented technology and the Touchstream Patents, knew that its products were infringing, and continues to sell, offer for sale, and/or use the Accused Functionalities such that TCL is willfully infringing the Touchstream Patents.

66.     The facts discussed above support an inference of conscious copying by TCL of Touchstream's technology, which TCL knew or should have known was patented such that copying would amount to patent infringement. The similarity of TCL's technology to that presented by Touchstream evidences copying with the knowledge that this would lead to infringement.

67.     Further, TCL has not ceased its infringing behavior. To date, TCL is still selling, offering for sale, and/or using the Accused Functionalities such that TCL is willfully infringing the Touchstream Patents. To date, TCL is increasing sales of infringing products as its overall unit volumes are increasing, as described above.

68.     All of these facts taken together constitute willful infringement by TCL, with actual or imputed knowledge of Touchstream's patents, or at the very least willful blindness to the knowledge of those patents.

69.     To the extent TCL does not directly infringe the Touchstream Patents, it has induced infringement by its United States subsidiaries from at least the date of Touchstream's letter to TCL, but more likely earlier due to TCL's likely knowledge of prior lawsuits where one or more of the Touchstream Patents were at issue, the various correspondence between the companies about the Touchstream Patents, and the similarity between TCL's accused technology and the inventions disclosed in the Touchstream Patents. Since at least the period previously discussed,

TCL has induced its agents in the United States to perform the accused services in the way claimed in the Touchstream Patents for the unique benefits provided by those valuable inventions, as described above.

## COUNT I: INFRINGEMENT OF THE '251 PATENT

70.     Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–69, *supra*.

71.     TCL directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 1 of the '251 Patent by performing the methods described in ¶¶ 35-48, *supra*.

72.     For example, TCL (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) the machine-implemented method of controlling presentation of video content on a display device that loads any one of a plurality of different media players. *See, e.g.*, ¶¶ 38-41, *supra*. TCL further assigns, by a server system, a synchronization code to the display device. *See, e.g.*, ¶ 39, *supra*. TCL further receives, in the server system, a message from a personal computing device that is separate from the server system and separate from the display device, wherein the message includes the synchronization code. *See, e.g.*, ¶¶ 39-41, *supra*. TCL further stores, by the server system, a record establishing an association between the personal computing device and the display device based on the synchronization code. *See, e.g.*, ¶¶ 39-41, *supra*. TCL further receives, in the server system, one or more signals from the personal computing device, the one or more signals specifying a video file to be acted upon and identifying a particular media player for playing the video content, the one or more signals further including a universal playback control command for controlling playing of the video content on the display device by the particular media player. *See, e.g.*, ¶ 40, *supra*. TCL further converts, by the server system, the universal playback control command into corresponding programming code to control playing of

the video content on the display device by the particular media player, wherein converting the universal playback control command includes selecting from among a plurality of specific commands, each of which represents a playback control command for a respective media player. *See, e.g.*, ¶¶ 40-41, *supra*. TCL further stores, in a database associated with the server system, information for transmission to or retrieval by the display device, wherein the information specifies the video file to be acted upon, identifies the particular media player for playing the video content, and includes the corresponding programming code to control playing of the video content on the display device by the particular media player in accordance with the universal playback control command. *See, e.g.*, ¶¶ 40-41, *supra*.

73.    Alternatively, or in addition to its direct infringement, TCL actively encourages its subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, TCL has and continues to actively induce its subsidiaries, vendors, and/or customers to perform the steps of at least claim 1 of the '251 Patent. TCL encourages this infringement with a specific intent to cause its subsidiaries, vendors, and/or customers to infringe. TCL's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

74.    TCL's infringement of the '251 Patent has been, is, and continues to be willful, including TCL's infringement of at least claim 1 as described at ¶¶ 35-48 and ¶¶ 49-69, *supra*.

75.    Touchstream has been and will continue to be irreparably harmed by TCL's infringing acts, requiring the entry of a permanent injunction to prevent TCL's further infringement of the '251 Patent because Touchstream does not have another adequate remedy at law.

## COUNT II: INFRINGEMENT OF THE '062 PATENT

76.    Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–75, *supra*.

77.    TCL directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 10 of the '062 Patent by performing the methods described in ¶¶ 35-48, *supra*.

78.    For example, TCL (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) performs a computer-implemented method for remotely presenting various types of content. *Id.* TCL further generates, by a personal computing device, a set of messages that includes a first command in a first format and a reference to a piece of content associated with a particular media playing application. *See, e.g.*, ¶¶ 40-41, *supra*. TCL further communicates, by the personal computing device, the generated set of messages to a server system, wherein the server system is configured to generate a second command in a second format based on each of the first command and a configuration of the particular media playing application associated with the referenced piece of content. *See, e.g.*, ¶¶ 40-41, *supra*. TCL further causes, by the personal computing device based on the communication, a content presentation system communicatively coupled to the server system to utilize the second command to control the presentation of the referenced piece of content via the particular media playing application. *See, e.g.*, ¶¶ 39-41, *supra*.

79.    Alternatively, or in addition to its direct infringement, TCL actively encourages its subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, TCL has and continues to actively induce its subsidiaries, vendors, and/or customers to perform the steps of at least claim 10 of the '062 Patent. TCL

encourages this infringement with a specific intent to cause its subsidiaries, vendors, and/or customers to infringe. TCL's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

80.    TCL's infringement of the '062 Patent has been, is, and continues to be willful, including TCL's infringement of at least claim 10 as described at ¶¶ 35-48 and ¶¶ 49-69, *supra*.

81.    Touchstream has been and will continue to be irreparably harmed by TCL's infringing acts, requiring the entry of a permanent injunction to prevent TCL's further infringement of the '062 Patent because Touchstream does not have another adequate remedy at law.

## COUNT III: INFRINGEMENT OF THE '934 PATENT

82.    Touchstream adopts and incorporates by reference the allegations set forth in ¶¶ 1–81, *supra*.

83.    TCL directly infringes, either individually or jointly through acts of its controlled agent subsidiaries or third-parties, at least claim 17 of the '934 Patent by performing the methods described in ¶¶ 35-48, *supra*.

84.    For example, TCL (alone or in combination with its controlled agent subsidiaries and/or third-party vendors) performs method of controlling playback of various types of content. *Id.* TCL further provides, by a media receiver, a unique identification code of the media receiver to a computing device in communication with a server system. *See, e.g.*, ¶ 39, *supra*. TCL further, based on the provided unique identification code, receives, by the media receiver via the server system, a set of messages from the computing device, the messages referencing a piece of content associated with a first type of media playing application of a plurality of media playing application types, and including a set of commands converted from a universal format defined by the computing device to a first format that corresponds to the first type of media playing application.

*See, e.g.*, ¶¶ 39-41, *supra*. TCL further, in response to receiving the set of messages, selects, by the media receiver, the type of media playing application from a plurality of media playing application types based at least in part on its associations with the piece of content referenced in the received set of messages. *See, e.g.*, ¶¶ 39-41, *supra*. TCL further controls, by the media receiver, how the selected type of media playing application plays the referenced piece of content based on at least one command of the converted set of commands included in the received set of messages. *See, e.g.*, ¶¶ 40-41, *supra*.

85.    Alternatively, or in addition to its direct infringement, TCL actively encourages its affiliates, subsidiaries, vendors, and/or customers to infringe through the manner described above. Despite knowing of the Touchstream Patents, TCL has and continues to actively induce its affiliates, subsidiaries, vendors, and/or customers to perform the steps of at least claim 17 of the '934 Patent. TCL encourages this infringement with a specific intent to cause its affiliates, subsidiaries, vendors, and/or customers to infringe. TCL's acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

86.    TCL's infringement of the '934 Patent has been, is, and continues to be willful, including TCL's infringement of at least claim 17 as described at ¶¶ 35-48 and ¶¶ 49-69, *supra*.

87.    Touchstream has been and will continue to be irreparably harmed by TCL's infringing acts, requiring the entry of a permanent injunction to prevent TCL's further infringement of the '934 Patent because Touchstream does not have another adequate remedy at law.

## <u>JURY DEMAND</u>

88.    Touchstream demands a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Touchstream requests entry of a judgment in its favor and against TCL as follows:

a)    Judgment that TCL has directly infringed one or more claims of the Touchstream Patents;

b)    An award of damages to compensate for TCL's infringement, including damages pursuant to 35 U.S.C. § 284, as well as prejudgment and post-judgment interest;

c)    An award of costs and expenses in this action, including an award of Touchstream's reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

d)    A permanent injunction restraining and enjoining TCL, and its respective officers, agents, servants, employees, attorneys, and those persons or entities in active concert or participation with TCL who receive actual notice of the order by personal service or otherwise, from any further sales or use of their infringing products and/or services and any other infringement of the Touchstream Patents;

e)    A finding that TCL has willfully infringed and is willfully infringing one or more claims of the Touchstream Patents;

f)    A finding that this case is an exceptional case, and awarding treble damages due to TCL's deliberate and willful conduct, and ordering TCL to pay Touchstream's costs of suit and attorneys' fees; and

g)    For such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

Dated: February 10, 2026                     Respectfully Submitted,

                                       */s/ Ryan Dykal*

Ryan D. Dykal (MO State Bar No. 60905)
Jordan T. Bergsten (DC Bar No. 90032105)
Mark D. Schafer (*pro hac vice* forthcoming)
Anita Liu (TX State Bar No. 24134054)
Philip A. Eckert (*pro hac vice* forthcoming)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
(t) 202-274-1109
rdykal@bsfllp.com
jbergsten@bsfllp.com
mschafer@bsfllp.com
aliu@bsfllp.com
peckert@bsfllp.com

***Counsel for Plaintiff***
***Touchstream Technologies, Inc.***